David 0. Boehm, J.
The court has before it the transcript of the testimony and evidence before the December 1969 Grand Jury of the County of Monroe, upon which it bases the report presented to the court. It appears that on December 22, 1969, beginning about 4:00 p.m., there was a meeting in the Monroe County Health and Social Services Building on Westfall Road in a conference room on the third floor occupied by the Department of Social Services of the County of Monroe. At the meeting were the County Director of Social Services, the Deputy Director of Social Services, the general case work supervisor, and three representatives of a group of welfare recipients called The Rochester Association for Welfare Rights.
The evidence shows that the Monroe County Department of Social Services is one of the largest, if not the largest, departments in the county government. It employs approximately 550 people. The largest division in it is the Social Services Division which has a staff of several hundred case workers involved in family and child services. The Director of Social Services is an appointee of the County Manager, serving for a five-year term. He administers the entire department and is the chief executive of its employees.
It further appears that the operations of the Monroe County Department of Social Services are essentially controlled by State and Federal law and State and Federal administrative regulations. The department, subject to these laws and regulations, makes welfare grants to needy residents of Monroe County. Such grants are legislatively controlled by the State Legislature which, by law, has established the precise amount of a grant which may be given in every case. Before July 1, 1969 there was a flat grant system, but grants could be supplemented by the local departments of social services, depending upon individual needs and circumstances. However, effective July 1, 1969, local authority to make adjustments on an individual need basis was terminated, and thereafter local welfare agencies could supplement grants only within a very narrowly defined 11 emergency ’ ’ area.
The effect of the change was to leave the County of Monroe without the legal means to deal with particular hardship cases which did .not fall within the rigorous legislative definition of *737 “ emergency ” and, to this extent, the Department of Social Services, restricted by these limitations, found itself impotent to meet continuing serious needs.
It appears that monthly meetings were arranged between the Director of Social Services, with some of his department officials, and the representatives of the welfare recipients. The meetings were unable to effect a cure, but did act as a palliative to the problem by keeping open the lines of communication.
There had been six or seven prior meetings, conducted on a once-.a-month schedule in the County Health and Social Services Building, except for one held at the office of the Welfare Bights group in St. Luke’s Church on Fitzhugh Street in Bochester. The meetings, purposely designed to be a channel of communication between welfare recipients and the Department of Social Services, covered a wide range of subjects, including social .service grants, department policy, requests for specific kinds of services, reviews of progress with respect to problems previously discussed, and many others.
On the day in question, at the meeting in the conference room on the third floor of the County Health and Social Services Building, one of the representatives of the welfare recipients placed a type of ratchet lock upon the door which prevented anyone from going out or coming in. The news media had been previously informed by the Welfare Bights group that this was going to occur and the “ lock-in ” was well publicized in all of the communications media.
The following day, the Grand Jury commenced an investigation. This investigation did not result in an indictment or finding of criminal activity, but a report was submitted to this court containing findings and recommendations for administrative action pursuant to paragraph (c) of subdivision 1 of section 253-a of the Code of Criminal Procedure.
By paragraph (c) of subdivision 1 of section 253-a of the Code of Criminal Procedure, effective July 1, 1964, the Grand Jury was given the power which it did not previously have, to propose “ recommendations for legislative, executive or administrative action in the public interest based upon stated findings.”
Prior to that time, the cases uniformly held that “ A grand, jury is not charged with the general supervision and regulation of public officials, and is not clothed with plenary powers in respect to the manner in which they shall perform their duty. ’ ’ (People v. Tatum, 60 Misc. 311, 315); that Grand Juries “ are not part of the administrative government of a great municipality.” (Matter of Heffernan, 125 N. Y. S. 737, 738); and *738 that 6 ‘ the grand jury may not assume the right to act as a legislative body or ,a planning commission.” (Matter of Schiro, 10 Misc 2d 552, 554.)
The Grand Jury has no powers beyond those granted by the Constitution or statutes. (Matter of Wood v. Hughes, 11 A D 2d 893, affd. 9 N Y 2d 144; Matter of January 1967 Grand Jury, 52 Misc 2d 895.)
Although the Grand Jury now has the authority to make recommendations for legislative, executive or administrative action, its report containing such recommendations may be received by the court as a public record only if the court is satisfied that the report meets the requirements of the statute and is supported by a preponderance of the credible and legally admissible evidence. (Code Crim. Pro., § 253-a, subd. 2, par. [a].) This requirement was not changed when paragraph (c) of .subdivision 1 was added. Obviously, therefore, the Legislature did not intend such recommendations for legislative or administrative action to be made without .sufficient satisfactory evidence that such was “in the public interest”. Otherwise, the requirement for such recommendations to be supported by the preponderance of the credible and legally admissible evidence would not have been necessary. To this extent, the earlier cases are still controlling and their expressions limiting the power of a Grand Jury to act as a legislative body or administrative arm of government continue as precedent to which this court should adhere.
It is understandable that a Grand Jury may not agree with the judgment of the head of a department of government and that, given the same situation, it well may have acted differently. However, in the absence of satisfactory evidence disclosing that needed or desirable action was hindered by the lack of adequate legislative,'executive or administrative power, this is not what was intended by the code. In the matter before us, the preponderance of the evidence demonstrates that there already exists legal power to do the very thing which, within a relatively short .space of time, was done. Sometime after 6:00 p.m., when the welfare representatives were directed to leave by the Assistant County Manager, they requested permission to remain, which was denied. They were again directed to leave and were advised of the legal consequences if they refused. Thereupon, the lock was removed, the door was opened and everyone departed.
None of the department officials inside the conference room requested the welfare representatives responsible for the ‘ ‘ lock in ” to remove the lock, nor did they ask them to leave, nor did *739 they try to get out. Instead, it is apparent that they resolved to stay and discuss the problem which concerned them all. Although frustrating to the people on both sides of the ‘ ‘ bargaining table ”, it was conducted without anger, ultimatums or threats. The overwhelming evidence makes clear that the locked door did not compel a meeting which would otherwise not have taken place.
According to the Director of Social Services, he had good reason for handling the situation that afternoon as he did. This was an executive decision made by a competent government career man. It was a deliberate choice of action based upon the kind of knowledge which comes from responsibility, experience and a keen understanding of the enormously difficult position the county had been placed in by the recent severe cut-back in State economic aid, the rising welfare load, and his department’s legislatively imposed helplessness to improve a situation which had considerable impact inside the urban core where many welfare recipients live. The resulting climate involved the possibility of serious ramifications. Compounding an already troublesome situation was the fact that it was the by-product of a decision originating outside of the county, but which the county and its top echelon officials were powerless to alleviate because of the legislative handcuffs placed upon them. In a very real way, they, themselves, were “ locked in ”.
If ever there was a need for flexible, intelligent executive judgment, this was the time for it. One thing the Director of Social Services quite obviously did not. require was a set of leg-irons on top of the handcuffs he already wore. The fact •that the Grand Jury may have been unhappy with the entire welfare system, or that it regarded the demands of the welfare representatives as unreasonable or ridiculous, or that it would have preferred a more abrupt and draconian termination of the meeting is, in the final analysis, no more than an expression of attitude and, as such, does not support a substitution of its discretion for that of the Director of Social Services.
As responsible citizens of the community, the concern of the members of the Grand Jury for the orderly processes of government to be protected is fully justified. As members of the Grand Jury, one of the sturdiest pillars of our system of justice, their concern became an obligation when they took their oath. But, absent the showing of facts that, ‘ ‘ by the preponderance of the credible and legally admissible evidence ’ ’, there is in the public interest some legislative, executive or administrative action which is necessary or desirable, a Grand Jury may not, even by recommendation, direct or regulate the conduct of government.
*740 The language in Matter of January 1967 Grand Jury (52 Misc 2d 895, 897) is appropriate here as well: “ There can be no doubt but that those members of the Grand Jury whose actions made this discussion and these decisions necessary were moved by pure motives and honest intentions. But this is not enough. A grand jury must meticulously observe those provisions of law which define and limit its powers and duties and the procedures it must follow. It did not do so here and this court is required to nullify the results of this failure. ’ ’ Accordingly, the report is ordered sealed.